```
             UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Derrick D. Hentschel

   v.                                    Case No. 15-cv-215-SM

Rockingham County
Department of Corrections

## REPORT AND RECOMMENDATION

Pro se plaintiff, Derrick Hentschel, who is currently being incarcerated by the Rockingham County Department of Corrections ("RCDC"), claims that the RCDC violated his rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-34.  His claim is based on allegations that he is disabled, and that his unaccommodated disability prevented him from using the outside recreation area at the Rockingham County House of Corrections ("HOC"), because inmates in his housing unit are separated from the recreation area by a stairway that his disability prevents him from using.  Before this court for a report and recommendation is a motion for summary judgment in which defendant argues that plaintiff did not exhaust the administrative remedies available to him before filing his ADA claim, as required by the Prison Litigation Reform Act of

1995 ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff objects. For the reasons that follow, defendant's motion for summary judgment should be granted.

## Summary Judgment Standard

"Summary judgment is appropriate as long as the record reflects no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." United States v. McNicol, 829 F.3d 77, 80 (1st Cir. 2016) (citing Fed. R. Civ. P. 56(a); Schiffmann v. United States, 811 F.3d 519, 524 (1st Cir. 2016)). "An issue is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party." Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010)). When ruling on a motion for summary judgment, the court must "take the facts and all reasonable inferences therefrom in the light most hospitable to the nonmoving party." McNicol, 829 F.3d at 80. To defeat a summary-judgment motion, "[t]he non-moving party . . . must 'produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe.'" Xiaoyan Tang v. Citizens Bank, N.A.,

21 F.3d 206, 215 (1st Cir. 2016) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)).

## Background

The facts recited in this section are all undisputed, and are viewed in the light most favorable to plaintiff.

On April 24, 2015, Hentschel was booked into the Rockingham County HOC. At all times relevant to this matter, HOC inmates were subject to rules and regulations promulgated by the RCDC. Those rules outline a grievance procedure that requires an inmate with a complaint about the conditions of his confinement to: (1) direct an informal/oral grievance to the Correctional Officer on duty and then pursue that grievance up the chain of command, concluding with presentation to a Lieutenant; (2) file a formal/written grievance with the Captain, in the event that his grievance has not been resolved by a Lieutenant; and (3) file a written appeal with the Assistant Superintendent of the RCDC, and then with the Superintendent, in the event that he disagrees with the Captain's decision. As for the relationship between the first two steps, the rules provide: "If you are not satisfied with the solution offered to you by the Lieutenant, you may then write a Grievance to the attention of the Captain."

Def.'s Mem. of Law, Ex. A (doc. no. 38-3), at 10 of 27.  Thus, before an inmate may file a formal/written grievance with the Captain, he must first receive an unsatisfactory response to an informal/oral grievance from a Lieutenant.  However, the rules do not appear to specify any particular form on which a formal/written grievance must be presented to the Captain.

On June 26, 2015, Hentschel was placed on Unit D of the HOC.  The next day, all inmates were given outside recreation time.  When Hentschel went outside, he "commented on the 'stairs' [he] had to go down to reach the [outside recreation] area."  Hentschel Decl. (doc. no. 57) ¶ 21.  According to Hentschel:

> There is no other alternative way for inmates [on Unit D] to gain access to this recreation area.  "Stairs" was the reason I was moved to another unit [Unit D], so I expressed my feelings towards the correctional officer on duty that day.
>
> The next day I was not allowed to participate in outside recreation with the other inmates.  Sgt. Warden was on the unit at that time and told me I was no longer allowed outside.  I expressed my grievance to him and requested whom I could speak to about the situation.  No other option was given, only my isolation from the other inmates['] activity of outside recreation.

Id. ¶¶ 21-22.  In addition to his own declaration, plaintiff has produced records from the HOC including the following relevant inmate notes: (1) on June 27: "[t]his inmate was heard by this

4

officer complaining about using the D-Block yard steps during yard time," Pl.'s Obj., App. (doc. no. 45-3), at 1 of 3; (2) on June 29: "[n]o Yardtime," id.; and (3) on July 3: "[inmate] was seen . . . making complaints to another [inmate] about being 'segregated' at yard time [and] was also telling the other [inmate] he would sue for the unfair treatment," id. at 2 of 3. Finally, on July 3 or 4, Hentschel submitted a sick call request to the HOC's health-care provider, PrimeCare Medical, Inc., that give following reason for the request:

> I have been profiled and segregated because of my disability; this facility has not accommodated to my disability, but has "punished" me, keeping me from another inmates normal activities, i.e., "outside recreation." There should be ramps where stairs are to accommodate people like myself; with disabilities. We shouldn[']t be punished.

Pl.'s Obj. (doc. no. 45-2), at 22 of 61.  A member of the medical staff responded: "The medical department is not restricting you from yard use.  Please follow up with corrections regarding this issue."  Id.

Plaintiff has produced no evidence that he ever: (1) presented an informal/oral grievance about yard time to a Lieutenant; (2) directed a written grievance on that matter to the Captain; or (3) directed a grievance appeal to the Acting Superintendent or the Superintendent.  On the other hand, the

5

RCDC Superintendent Stephen Church has testified, in a declaration, that he has never received a grievance appeal from Hentschel concerning his lack of access to the outdoor recreation area. See Def.'s Mem. of Law, Church Decl. (doc. no. 38-2) ¶ 18.

Hentschel filed this action on June 8, 2015, claiming that HOC officials had denied him various prescription medications. In a subsequent filing captioned "Motion for Putative Damages; Pain and Suffering," Hentschel claimed that

> [t]he Rockingham County Department of Corrections has not accommodated to this petitioners disability, but has punished him, keeping him from any other inmates' normal activities outside; by restricting petitioner from "stairs" and not accommodating a "[ramp]" for a person[] [petitioner] with a disability.

Doc. no. 3 ¶ 5 (citing the "Disabilities Rights Act").[1] Plaintiff's motion was received by this court on July 10, 2015, but states that it was submitted on July 1, 2015. See doc. no. 3, at 3 of 3. Ordinarily, the so-called "prison mailbox" rule, see DeLong v. Dickhaut, 715 F.3d 382, 385-86 (1st Cir. 2013), would direct the court to deem the motion to have been filed on July 1. But, in his affidavit, Superintendent Church testified

---

[1] In addition to filing his Motion for Putative Damages in this court, Hentschel sent a copy of that pleading to the New Hampshire Disability Rights Center. See doc. no. 3, at 3 of 3.

6

that Hentschel's motion "appears to have been sent to the New Hampshire Attorney [General] on July 9, 2015." Church Decl. ¶ 13. In light of that evidence, plus the July 3 inmate note suggesting that Hentschel's litigation of his disability issue was yet to commence, and the court's obligation to view the evidence in the light most hospitable to Hentschel, see McNicol, 829 F.3d at 80, the court concludes that, for the purpose of ruling on defendant's motion for summary judgment, Hentschel filed his motion on July 9.

For his part, Hentschel characterizes the assertion of his ADA claim in this court in the following way:

> On July 29, 2015 I had filed a[n] "amendment" stating the details of my issues with RCDOC not allowing me outside recreation.
>
> The court had recognized the [ADA] claim. It was not my intentions.
>
> With my minimal experience with law, I was only trying to document the behavior from RCDOC.

Hentschel Decl. ¶¶ 24-26. The "amendment" to which Hentschel refers in his declaration is a pleading captioned "Motion to Compel Tort Claim." See doc. no. 8.

## Discussion

On preliminary review, the court allowed Hentschel to serve

a claim against the RCDC for violating 42 U.S.C. § 12132 by denying him access to a public service, program, or activity, i.e., the HOC's outdoor recreation area, by reason of his disability.  Defendant moves for summary judgment, arguing that Hentschel did not properly exhaust the administrative remedies available to him through the RCDC grievance procedure before he filed his ADA claim.  Defendant's argument is meritorious.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A prisoner seeking to exhaust his administrative remedies under the PLRA must complete the administrative review process that is available at his correctional facility in accordance with the procedural rules of that facility.  See Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Jones v. Bock, 549 U.S. 199, 218 (2007); Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Moreover, a prisoner must exhaust his administrative remedies before filing suit, and if he fails to do so, his unexhausted claim(s) must be dismissed.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).  To prevail on the affirmative defense of

failure to exhaust, at summary judgment, "the defendant must show that no reasonable jury could find that [the plaintiff] exhausted the administrative remedies available to him before commencing [his] action."  Polansky v. McCoole, No. 13-cv-458-JL, 2016 WL 237096, at *3 (D.N.H. Jan. 20, 2016).

As a preliminary matter, it is necessary to determine when, precisely, Hentschel first asserted his ADA claim.  While he argues in his objection to summary judgment that he first asserted that claim on July 29, 2015, in his "Motion to Compel Tort Claim," no reasonable reader could conclude that plaintiff's July 9 Motion for Putative Damages does not assert an ADA claim.[2]  Thus, the operative question is whether Hentschel had exhausted his administrative remedies as of July 9.  No reasonable jury could find that he had.

It is undisputed that Hentschel never filed a grievance appeal with the Superintendent, and plaintiff has produced no evidence to create a genuine issue as to whether he filed a grievance appeal with the Assistant Superintendent.  Therefore, when he asserted his ADA claim, Hentschel had not completed the

---

[2] That reading of the July 9 motion is reinforced by the fact that Hentschel sent a copy of that motion to the New Hampshire Disability Rights Center.

third step in the administrative review process made available to HOC inmates under the RCDC's rules and regulations. Beyond that, Hentschel has produced no evidence that he completed the second step, by filing a written grievance with the Captain, or that he fully completed the first step, by presenting his informal/oral grievance to a Lieutenant.[3] Thus, no reasonable jury could find that Hentschel exhausted the administrative remedies available to him before he filed his ADA claim on July 9.

Plaintiff responds to defendant's exhaustion argument by contending that at some point after June 26, he: (1) "had a number of request slips and oral grievances to ranking officers," Pl.'s Obj. (doc. no. 45) 2; and (2) "had written a 'request' for a grievance," id., to which he received no response, leaving him "'unable' to obtain a grievance," id. To be sure, there are circumstances in which proper exhaustion may

---

[3] Plaintiff cites the sick call request he filed on July 3 or 4 as evidence that he satisfied the exhaustion requirement, but that request was directed to PrimeCare Medical, see Pl.'s Mem. of Law, App. (doc. no. 45-2), at 22 of 61, not the Captain (or any other RCDC correctional officer), and defendant has produced undisputed evidence that request slips directed to the medical department do not qualify as grievances for the purpose of pursuing the RCDC grievance procedure, see Church Decl. (doc. no. 38-2) ¶ 20. Accordingly, the fact that Hentschel filed a sick call request that addressed the substance of his ADA claim does nothing to demonstrate proper exhaustion.

be excused because a prison grievance procedure is unavailable to an inmate.  See Crosby v. Strafford Cty. Dep't of Corr., No. 12-cv-383-LM, 2014 WL 4385006, at *3 (D.N.H. Sept. 3, 2014) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)). Here, however, plaintiff has failed to produce evidence from which a reasonable jury could find that the RCDC grievance procedure was unavailable to him before he filed his ADA claim.

Hentschel's principal argument is that the RCDC grievance process was unavailable because his written request for a grievance went unanswered.  While a prison grievance procedure can be unavailable to an inmate when correctional officers "fail[] to provide [him] with the forms on which to file a grievance," Crosby, 2014 WL 4385006, at *4 (citing Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004)), there are several problems with plaintiff's argument.

First, notwithstanding his reference to an unsuccessful attempt to obtain a grievance, the RCDC rules and regulations do not appear to require formal/written grievances to be submitted on any particular form.[4]  And, indeed, in October of 2015,

---

[4] Beyond that, Hentschel has produced no evidence that requested a grievance before July 9, which is the date on which he asserted his ADA claim.  If did not request a grievance before July 9, then, necessarily, the RCDC grievance procedure was not unavailable to him on that date under the theory on

Hentschel submitted a written grievance without using an RCDC form, and the RCDC accepted it. See Def.'s Mem. of Law, Ex. B (doc. no. 38-4). That vitiates his argument that the second step of the grievance procedure was unavailable to him because correctional officers refused him the form he needed to submit a formal/written grievance. But, more importantly, Hentschel has produced no evidence that he ever completed the first step of the grievance process, which is a prerequisite to initiating the second step. According to Hentschel's declaration, the last Correctional Officer with whom he spoke before he filed his ADA claim was Sergeant Warden.[5] But before submitting a formal/written grievance to the Captain, an RCDC inmate must first receive an unsatisfactory response to an informal/oral grievance from a Lieutenant. But plaintiff has produced no

---

which he relies.

[5] In a section of his declaration that appears to be directed to the RCDC's response to complaints about his medical care, Hentschel makes several broad statements about the RCDC's responses to his requests for grievances. See Hentschel Decl. ¶¶ 15-17. But even if those statements were intended to apply to complaints about access to the recreation area, and even when they are viewed in the light most hospitable to plaintiff, see McNicol, 829 F.3d at 80, none of those statements is specific enough to create a genuine issue of material fact, see Xiaoyan Tang, 821 F.3d at 215. Similarly unavailing are plaintiff's vague references to presenting oral grievances to unnamed "ranking officers."

evidence that he either presented an informal/oral grievance about access to the recreation area to a Lieutenant or received an unsatisfactory response to such a grievance from a Lieutenant.  In sum, the undisputed facts show not that the grievance process was unavailable to Hentschel but, rather, that he failed to properly avail himself of that process before he filed his ADA claim.

## Conclusion

When Hentschel filed his ADA claim on July 9, 2015, he had not exhausted the administrative remedies provided by the RCDC for asking to it to correct the conditions he alleged as giving rise to his ADA claim.  Accordingly, that claim, which is the only claim in this case, should be dismissed, see Medina-Claudio, 292 F.3d at 36; defendant's motion for summary judgment should be granted; and the clerk of the court should be directed to enter judgment in favor of defendant and close the case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 26, 2016

cc:  Derrick D. Hentschel, pro se
     Corey M. Belobrow, Esq.